*479 STRINE, Chief Justice,
dissenting:
Although I understand and respect the approach my friends in' the Majority take to address the difficult problem this case presents, I respectfully disagree with their conclusion about what the foreclosure statute requires and would affirm the Superior Court’s well-reasoned orders resolving this case.[38] In this case, however sympathetic we may be to anyone facing foreclosure, the Shrewsburys have been living in a house for nearly seven years without making any mortgage payments, and one thing is therefore clear, that they are in no equitable position to continue to occupy the house, as they now owe in excess of $800,000 including unpaid principal, interest, and late charges,[39] according to The Bank, and have not even so much as made any good faith payment on the mortgage since July 2010.[40] There are, of course, complexities to the current mortgage system, but those complexities have also increased the pool of capital funding affordable mortgages for ordinary Americans. We should be careful about mandating as judges, not legislators, an increase in the costs to lenders of enforcing their rights when that is not necessary to protect the legitimate rights of borrowers. Costs that are above what is truly necessary to protect borrowers from inequitable conduct by lenders will be ultimately borne by all borrowers and especially the vast bulk of those who prudently borrow and make their loan payments. Because 10 Del. C. § 5061’s language plainly allows foreclosure by the mortgage holder, I would not, by judicial act, add the requirement that a bank must also prove it owns the note.
The mortgage that the Shrewsburys executed states that if the Shrewsburys failed to pay their obligations when due, the loan would be in default, and the lender could accelerate the remaining sum due and foreclose on the property. The mortgage also states “all payments accepted and applied by Lender shall be applied in the following order of priority: (a) Interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [escrow].”[41]
Delaware recognizes both statutory and equitable foreclosure methods.[42] Here, The Bank used the statutory method. 10 Del. C. § 5061 provides: “[s]ubject to the provisions of §§ 5062A, 5062B, 5062C and 5062D ... upon breach of the condition of a mortgage of real estate ... the mortgagee’s heirs, executors, administrators, successors or assigns may ... sue out of the Superior Court [corresponding to the property’s location] a writ of scire facias *480 upon such mortgage.... ”[43] Actions based on scire facias writs for mortgages have a long history in Delaware and receive extensive treatment in Woolley’s Practice in Civil Actions. Woolley says that plaintiffs in a scire facias sur mortgage action “should have a legal interest in the mortgage sued upon.”[44] Additionally, scire faci-as actions in general are “founded upon a record, the record in [scire facias sur mortgage], of course, being the mortgage.”[45]
The language of § 5061 also supports the idea that holding the mortgage is sufficient to confer standing. Section 5061 only refers to mortgagors and mortgagees and doesn’t refer to a note or note holder. Other parts of the Delaware Code, including other'parts of Title 10, acknowledge the existence of notes as distinct from mortgages.[46] The General Assembly could have referred to both or only note holders if it so desired, especially against a backdrop of invoking a writ with an extensive history of use for in rem proceedings. This is especially true given that the General Assembly amended § 5061 in 2012 to add a series of provisions protecting homeowners in foreclosure proceedings.[47]
Thus, we are faced with a situation where the most natural reading of the statute as well as the history of the action codified in it identify the mortgage holder as the person who is entitled to bring a foreclosure action, not the person holding both the note and mortgage. The Shrews-burys argue that allowing foreclosure based only on a mortgage opens the door to a dire scenario where an unfortunate homeowner could have her home foreclosed on by a mortgage holder and later have a separate note holder show up and demand payment. Were that a likely or even plausible result, the Shrewsburys might have a point. But, the reality is that homeowners in the Shrewsburys’ position are well protected against double collection.
For one thing, the mortgage itself provides that all payments have to be applied to the interest and principal due “under the Note.”[48] Thus, a mortgage holder would be obligated to put any money it receives from a judgment sale toward satisfaction of the note. For another thing, the statute protects the homeowners. 10 Del. C. § 5067, which is part of the Delaware Code’s subchapter on scire facias sur mortgage states “any surplus of the proceeds of sale of mortgaged premises, after satisfying the principal debt in the mortgage, with interest and costs, shall be rendered to the owner of the premises at the time of sale. Until the surplus is so rendered, the officer making the sale shall not be discharged upon the record of the court to which the sale is returnable.”[49] So, the sheriff who was appointed by the Superior Court to conduct the sale is responsible for ensuring the proceeds go to satisfy the mortgage debt. Finally, in Delaware, any foreclosure proceedings occur under judi *481 cial supervision and so a homeowner in the Shrewsburys’ situation could always raise the defense of satisfaction of the mortgage in a future proceeding.[50]
The Majority also may introduce unnecessary complication into the way the Superior Court will analyze its jurisdiction in future cases like this one. The Shrewsbur-ys’ argument all along has been that The Bank’s inability to produce the note was a defect in The Bank’s standing. The Shrewsburys’ characterization of the issue, if not their ultimate conclusion, is correct. “The issue of standing is concerned ‘only with the question of who is entitled to mount a legal challenge and not with the merits of the subject matter in controversy.’ ”[51] My friends in the Majority, though, state that their holding does not impose “new pleading requirements which must be contained in a mortgage foreclosure complaint”[52] and, instead, it is up to the defendant to assert that a foreclosing plaintiff is not entitled to foreclose because the plaintiff lacks the note. But, this sits uncomfortably with the normal proposition that “[t]he party invoking the jurisdiction of a court bears the burden of establishing the elements of standing.”[53] That is, if the Majority’s position is correct, to establish standing, the foreclosing plaintiff should be obliged to plead that it holds both the mortgage and the note. And, because any defendant faced with a complaint that does not do this will invoke the Majority’s decision and ask for dismissal for the failure of the plaintiff to do so, the Majority rule will in fact by necessity drive the form of foreclosing plaintiffs’ pleadings. The Majority acknowledges this when they urge counsel for foreclosing plaintiffs to include “an averment that the note, as well was the mortgage, was assigned to the plaintiff.”[54] And, the only evidence the Shrewsburys here cited that The Bank did not possess the note was a version of the note from 2013, almost two years before the foreclosure complaint was filed. Because notes like these are freely transferable, if this is evidence sufficient to meet a defendant’s burden to provide a factual basis that the foreclosing plaintiff does not hold the note, then the practical burden of the Majority’s rule is on a foreclosing plaintiff to plead this affirmatively. If these are the practical realities flowing from the Majority’s decision, it is probably best for all concerned to state this and to require a foreclosing plaintiff to plead the required elements up front so that the delays that have resulted in this case do not ensue in future cases.[55]

. The Superior Court’s decision accords with its earlier decisions on this topic that holding the mortgage was sufficient to confer standing on a foreclosing plaintiff. See, e.g., Deutsche Bank National Trust Company v. Moss, 2016 WL 355017, at *1, *2 (Del. Super. Jan. 26, 2016), aff'd sub nom. Moss v. Deutsche Bank National Trust Company, 148 A.3d 1170, 2016 WL 5660265 (Del. Sept. 30, 2016) (TABLE) (finding foreclosing plaintiff had standing to foreclose because it held validly assigned mortgage); HSBC Mortgage Corp. (USA) v. Bendfeldt, 2014 WL 600233, at *2 (Del. Super. Feb. 4, 2014), aff'd sub nom. Bendfeldt v. HSBC Mortgage Corp. (USA), 2014 WL 4978666 (Del. Oct. 7, 2014) (same).

. Appellant’s Corrected App. at A69 (Complaint, Ex. D § 5062D(b)(2) Affidavit in Support of Amounts Due (Docket No. 1, C.A. No. N15L-03-108)).

. Id. at A24 (Complaint (Docket No. 1, C.A. No. N15L-03-108)).

. App. to Appellee’s Answering Br. on Appeal at B6 (Mortgage).

. Monroe v. Metropolitan Life Ins. Co., 457 A.2d 734, 736 (Del. 1983).

. 10DeZ. C. § 5061.

. Woolley, supra note 5, at 919.

. Id. at 918.

. E.g., 10 Del. C. § 3912.

. The 2012 amendment added provisions mandating that defendants in foreclosure actions "must have an opportunity to apply for relief under a federal loss mitigation program," 10 Del. C. § 5062A, must receive specific information about foreclosures, id. § 5062B, have the right to pre-foreclosure mediation, id. § 5062C, and also required foreclosure complaints to contain statements of how the foreclosing plaintiff complied with the new provisions, id. § 5062D.

. App. to Appellee’s Answering Br. on Appeal at B6 (Mortgage).

. 10 Del. C. § 5067.

. Indeed, this State requires mortgagees to update mortgage records within sixty days of the mortgage's satisfaction, 25 Del. C. § 2111, and also provides a procedure to compel mortgagees to enter satisfaction if they otherwise fail to do so, id. § 2115.

. Dover Historical Soc. v. City of Dover Planning Comm’n, 838 A.2d 1103, 1110 (Del. 2003) (quoting Stuart Kingston, Inc. v. Robinson, 596 A.2d 1378, 1382 (Del. 1991)).

. Majority Op. at 478,

. Dover Historical Soc., 838 A.2d at 1109.

. Majority Op. at 478.

.The litigation that continues to be generated in this area suggests another possible reality. It could be that the perpetuation of procedural practices that were designed at a time in our history when capital markets and commercial practices were far different is inefficient. In a year that would have been the subject of science fiction in the period when the print was still fresh on the first edition of Woolley’s, it is likely not optimal to continue using a writ lawyers often refer to as "sci fi” and other procedural practices and writs no longer fit to purpose. A comprehensive look at statutory and rule provisions to simplify and make plain what is required would likely aid all parties to disputes like this, and in other *482 important areas of law such as landlord-tenant disputes, where cases involving someone’s ability to avoid eviction can turn on whether there was a narrowly defined error on the face of the record allowing a party to invoke a writ with a Latin name.